GURNEY (UNITED STATES v.). See Case No. 15,274.

# Case No. 5,876.

## The GUSTAVIA.

[Blatchf. & H. 189.][1]

District Court, S. D. New York. Dec. 28, 1830.

MARITIME LIENS—SUPPLIES—LIEN OF A SHIP'S BROKER FOR SERVICES.

1. Impertinent and irrelevant allegations in an answer stricken out on motion.

2. Whether supplies furnished to a vessel are necessary is a conclusion of law, and the claimant, in answer to a libel by a material man, is not required to either admit or deny that the articles furnished were necessaries.

3. A master may hypothecate his vessel for necessaries in a foreign port, unless he has at his command funds or credit of his owner.

[Cited in The George T. Kemp, Case No. 5,-341.]

4. A ship's broker has a lien on a foreign vessel, in the nature of the lien of a material man, for services in shipping a crew for the vessel, and for advances for their wages.

[Cited in Seaver v. The Thales, Case No. 12,-594; Scott v. The Morning Glory, Id. 12,-542; The A. R. Dunlap, Id. 513; The Thames, 10 Fed. 848; Nippert v. The Williams, 39 Fed. 828.]

5. But he has no lien on the vessel for services in drawing a contract between the owner of horses shipped as part of her cargo and hostlers who accompanied her to take care of the horses.

6. Semble, that it is not necessary for a material man to show that the supplies furnished to a vessel by him were actually necessary for her. If they were furnished at the request of her master, they create a lien on her, although they exceed her actual need, provided there was no mala fides, or collusion on the part of the material man.

[Cited in Holcroft v. Halbert, 16 Ind. 258.]

In admiralty. This was a libel in rem by a ship's broker against the Gustavia, a foreign vessel. The master was under the necessity of shipping a new crew in New-York, and, not speaking English, employed the libellant to procure the crew, and make the necessary advances to them, and have them on board on a day specified. The expenses of shipping the crew, and drawing up the shipping articles, and advancing a month's wages, were laid at $254, and for these materials and necessaries the libel was brought. It appeared that the crew were presented to the master, at the vessel, according to the contract, but that he was not ready to sail, and, for some reason not put in proof, declined receiving them, and they dispersed. A few days afterwards the master called on the libellant, and demanded of him a fulfillment of his contract, and gave notice that if the men were not furnished by the next day he should employ another person to ship them. The libellant refusing to have anything more to do with the business, unless his advances were repaid and compensation was made for his services, the master obtained the crew by other means; whereupon the libellant instituted this suit. One of the items contained in the schedule an-

---

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

nexed to the libel was for drawing a contract between the owner of the cargo and two hostlers who were to accompany the vessel to take care of some horses on board. Exceptions were taken to several allegations in the answer as impertinent and irrelevant, and to the answer itself, as neither admitting nor denying that the articles furnished were necessaries. The several allegations excepted to were stricken out on motion, after argument, without costs; but the court held, with reference to the exception to the answer itself, that the furnishing of all the articles was either admitted or denied, and that whether they were necessaries or not was a question of law. The exception was therefore disallowed.

Erastus C. Benedict, for libellant.

Thomas L. Ogden, for claimants.

BETTS, District Judge. By the well-settled principles of maritime law, a vessel is liable for necessaries furnished to her in a foreign port. The civil law gave a lien in such cases, without regard to the domicil of the owner; and the same rule substantially prevails in this state, though, in the case of domestic vessels, the remedy must be under the local law, and not in conformity to the general maritime law. The Robert Fulton [Case No. 11,890]; The General Smith, 4 Wheat. [17 U. S.] 438. By the term "necessaries," the law does not contemplate those things only which are indispensable to the safety of the vessel and her crew. But, whatever a prudent owner, if present, would be supposed to have authorized, the master may order, and the vessel will be held responsible for them. Webster v. Seekamp, 4 Barn. & Ald. 352. The necessity and propriety of shipping a crew in this case, at this port, are not questioned; nor is it denied that the services of the libellant were rendered in procuring them; but it is supposed that he has no remedy against the vessel for his demands. The contract has all the constituents of a maritime contract. It had respect to the equipment of a foreign vessel for sea-service, and may, accordingly, be prosecuted in this court, and carry with it the privileges appertaining to suits by material men. Nor can it be considered as made exclusively upon the responsibility of the master. He was not only a foreigner and a stranger to the libellant, but was wholly unknown in this port. No guarantee of the contract was asked or received, and the implication would, therefore, be exceedingly forcible, that the libellant did not intend to waive any security the law might afford him in respect to the matter of his undertaking.

The objection to the remedy against the vessel most relied upon is, that a case is not made out in which the master could have subjected the vessel to this claim by an express hypothecation. To enable him to exercise this power, it is supposed the proofs must show that he had no funds or credit, by means of which he could have satisfied the demand, and that, accordingly, it had become an act of extreme necessity for him to hypothecate the vessel. The objection also assumes, that a lien by implication can never arise, except in cases where the master might have given one directly. This court has heretofore had occasion to examine the point as to the power of a master to hypothecate a vessel, without its being shown that he had no funds of his own adequate to supply her wants. The conclusion arrived at was, that he might do so, unless he had means of the owner under his control, and that he was not bound to advance his own moneys. The William & Emmeline [Case No. 17,687]. Under this doctrine, it would be useless to inquire whether the master possessed funds of his own, out of which these expenses might have been satisfied, inasmuch as, if he had them, it was at his option whether to apply them to the use of the vessel or not. There is no evidence that he had any funds of the owner, or that the owner possessed any credit in New-York, to either of which resort might have been had to meet this demand; and, upon the evidence before me, I am satisfied that the owner had neither funds nor credit at New-York, within the control of the master, which might have supplied the means of discharging this claim without resorting to the ship.

But, it appears to me that the right of the libellant to a lien rests upon higher principles than these. The libellant is in the place of a material man, and possesses the privileges of one who has furnished a foreign vessel with necessary supplies. The law secures his claims by giving them a privilege against the ship itself. The moment the services were rendered, the privilege was perfected; and I am not aware that any thing inter alios acta, could, independent of the libellant's assent, divest that right without satisfaction of it. It does not appear to me the objection can be maintained in such cases, that the master was furnished with funds to meet all necessary disbursements, and that the only remedy is upon those funds, or against the master personally. Nor, in a case requiring the decision, should I be inclined to exact proofs from material men that the supplies furnished or services rendered by them, at the request of the master, were actually necessaries. This, from the nature of things, must be a matter left to the judgment of the master. All the cases recognise him as the agent of the owner, clothed, by implication of law, with the authority of the owner in respect to the employment and refitment of the vessel; and, unless the party dealing with him acts with a knowledge that the master transcends his powers, or colludes with him to defraud the owner. I am not aware of any principle which will deprive such party of compensation for appropriate supplies or services furnished or rendered on the requisition of the master, although they may exceed the actual need of

the vessel. Defects in his vessel, not discoverable by the most sagacious inspectors. may be known to the master, which it will be his duty to have repaired or provided against. For instance, in making his voyage, he may find that his spars are not properly set, or are disproportioned to the bulk of the vessel, so as to impair her sailing, or impede her working; or he may order additional sea-stores, sails, cordage, anchors, &c. Who but the master can decide upon the necessity of these things? It would be for the safety of navigation and general commerce to leave the subject to his discretion, as between the ship or her owners and material men.

The more simple rule, and the one most consonant, in my judgment, with the spirit of the maritime law, is, to hold the owner and his vessel responsible for all engagements of this character entered into bona fide with the master. The chance that owners will suffer under the operation of this rule, is vastly less than that material men will be wronged by exacting from them proof that the judgment of the master was correct, and that the supplies furnished were actually necessary for the vessel. All serious evil in the operation of the rule will be avoided by allowing the owner to prove the mala fides of the credit. The court has never met with a case where there was probable ground for supposing that labor, supplies and materials were furnished a master of a vessel to enable him to pervert them to his own benefit and to the fraud of his owners. When such a case is presented, the rules of the maritime law will supply an ample protection to the owner upon whom the fraud may be attempted. The vessel is liable for the libellant's demand for hiring the seamen, and for the advance of wages to them. But the residue of the account, for drawing a special agreement in relation to hostlers, and for hiring the hostlers. cannot be allowed. It may have been a convenience to the owner of the cargo to have that description of persons shipped to take care of his stock of horses; but, in that particular the vessel had no concern. It was not a service necessary to the safety, betterment or navigation of the vessel, and cannot be charged upon her. Let it be referred to the clerk to inquire and ascertain the value of the libellant's services in shipping the crew. and the amount of wages advanced to them, and to report thereon to the court.